All right, very well. Please leave your microphones on mute when you're not speaking and we'll hear from each of you in order. Mr. Muraskin, we'll hear from you first. Thank you very much, Your Honor, and thank you for holding this special session. David Plaintiffs here have alleged three distinct injuries, in fact, each of which is a basis to reverse the district court. To argue otherwise, defendants have to overlook binding circuit precedent, ask this court to reject the Fourth Circuit's decision in P.W. Stein, which held that essentially identically situated plaintiffs had standing to challenge the North Carolina law, on which the Arkansas law is modeled, and must also take issue with factual evidence. There are several allegations in the complaint, which is inappropriate if this motion is misstaged. To briefly touch on each of the three independent bases for standing, first, there's CHILP, where a statute restricts plaintiffs' desired activities, so they are no longer engaging in those activities. The statute produces a current and ongoing injury in fact. That is, the presence of the statute itself. It restricts First Amendment freedoms, makes it objectively reasonable for plaintiffs to forego engaging in those freedoms, and that self-censorship in response to a law targeting their speech is an actual and ongoing harm. Plaintiffs don't need to allege anything more for an injury in fact. And contrary to defendants' repeated assertions, this court has already held in Balao, which relied on your decision, Judge Colleton, in digital marketing, I'm sorry, digital recognition network, excuse me, that a private, a statute that solely provides for private civil enforcement can produce a CHILP. That's been resolved already. Was Balao a private civil enforcement case? You have to go out and name the private defendants who can enforce the statute. That goes to redressability and traceability, which defendants here have said the court should not reach. And the only issue before the court today is injury in fact. Balao affirmatively holds that there is injury in fact where a statute provides for private civil enforcement. And again, Judge Colleton, your decision in digital recognition network said it assumed that. We assumed it there. We didn't reach a holding on it because we ended up concluding there was a lack of standing for other reasons. But you think Balao went a step further, I guess, even though Balao ended up holding no standing, it might be debatable whether the injury part was holding. Well, I actually don't think it is, Your Honor, because if you look right under, so what happens in Balao is they first say, can a private civil defendant have a statute, excuse me, that solely provides for private civil enforcement create injury? They point to your decision, say yes. And then they point out to this whole discussion about whether, in fact, the ACLU in that case knew that it was going to violate the statute. And they said that's debatable, but it doesn't matter. And then right after that discussion, they explicitly say we hold that there is an injury in fact here. Then they go on, but they take your decision a step further. And to be clear, this makes perfect sense. The whole point of the chill doctrine is that where a statute exists that covers your desired activities, then we should not require people to have to go out and violate that statute in order to secure their First Amendment rights. The point of the open marketplace of ideas is people shouldn't be afraid to go out and exercise their rights. The state can't outsource its ability to chill speech to private defendants and then claim that there's no, and then everyone can say there's no way to get into court. That would gut the chill doctrine. That's what they're saying here. And ironically, what the legislative history shows is that's exactly what the state was trying to do. They were trying to disgorge the court from being able to ever hear these cases so they can go out and chill speech, the exact opposite of what the chill doctrine is meant to do. But even if the court would disagree with that, there's a second and independent injury here that we've alleged, which is that we allege that we will be subject to suit by these defendants. That's a, unlike chill, that's a future looking harm rather than a present harm. But we allege that we are positioned to be subject to suit by defendants, and the allegations that we allege are that we are ready, willing, and able to violate the statute. We do need to show that there are no contingencies, but we are just one step away from violating the statute, and therefore we have a future looking harm. Finally, we've also alleged that we are suffering as listeners. The First Amendment recognizes a right to receive information, and where a statute chills others from providing that information such that we can no longer receive it, we have listeners standing. And really none of this should come as any surprise. Arkansas designed this law to be used against these plaintiffs. They empowered these private defendants to use the law. Defendant Deanne Vaught specifically said when she was on the floor as a legislator that she was using this in part to protect her private business. It shouldn't be unusual or a surprise that plaintiffs fear this statute being used by these defendants against them, and therefore they've modified their behavior. I think one area we all agree is that this case is not very complex. We think it's not very complex for different reasons, but I think I don't want to... I don't see in the complaint that there's an allegation that the appellees are actually engaged in the types of practices that you're trying to end. It seems to actually be really a claim that you should be permitted or your agent should be permitted to investigate. Is that true and what's significant about that? Your Honor, the answer is no, that's not true, but it's also not significant. So if you point... I'll put you to JA 28 paragraph 70 to 71 of the complaint, which makes two factual allegations about PCOS facilities. First, that they have increased line speed and second, that they use what a slaughter technique known as live hang. And what these plaintiffs say is they want to specifically investigate and reveal those conditions. And that therefore we know those are occurring, there are things that we are going to uncover. Second, I'll point you to JA 27 paragraph 69, where plaintiffs explain that they wish to reveal what's going on at Deanne Vought's farm precisely because she sponsored this law. These plaintiffs have been leaders in challenging these ag-gag laws across the country. Part of their political speech is revealing how they've been used to suppress important information. So going into Deanne Vought's farm, whatever they find there, is important for plaintiff's political advocacy. So those are two concrete facts, or three really, that we know about these defendants that we are going to be able to uncover. And defendants just need to dispute those facts. Well if the answer to my question is no, what's the need to go on the premises? Couldn't there simply be this information that you say is already out there be published? I think we may be misunderstanding each other slightly, Your Honor. We know what's occurring at the facilities. We don't have video of what's going on at the facilities yet, if that's what your question is. We want to go out and document that to reveal that to the public. What these plaintiffs do is that they show the information to the public. And they believe that by showing the information to the public, they can build political pressure for change. And that's what they want to do. But to answer the second part of your original question, Judge Shepard, it doesn't matter. Because what defendants and the district court did was confuse the future risk of harm, where we need to prove that we can violate the statute, with chill. Chill only requires that we show that we fall within the statute's terms. What we desire to do falls within the statute's terms. And we don't have to go out and prove anything about what's going on in defendants' farms. This is Initiative Referendum Institute at the Tenth Circuit en banc case. With the Tenth Circuit, Judge McConnell there said writing for the en banc court was that it would be silly to require plaintiffs to allege all the facts of what they were going to uncover for chill. Because the whole point is with chill that the statute has stopped us from engaging in these activities in the first place, stopped us from planning these activities. And even if you look at Initiative Referendum Institute, the plaintiffs said that they had no idea what referendum they wanted to propose under the law. But because the law stopped them from even thinking about what referendum to propose, they found that was standing. And, you know, Judge Carlton, another case that you've been involved with, ALDF v. Reynolds, which raises the Iowa IGAG statute. As you probably recall from having heard this case earlier this year, Iowa didn't even challenge plaintiffs' standing on appeal. Because it was so clear that when plaintiffs fall within a statute, even if they haven't detailed the specific plans of what they're going to do, and that was true in Reynolds, plaintiffs had none of these specifics that are present here, they can be chilled. But because plaintiffs have these specifics, they know that they will be able to violate the statute and reveal information that's of concern for them, or I should say they are positioned to have sufficiently alleged that, that they then fall within the second basis for standing, which is that they can show that they suffer a future risk of harm. That's distinct from chill, Judge Shepard, so they don't even need those facts. What about the practical concern here that if the state passes a statute like this, the implication of the plaintiff's position here seems to be that they can sue anybody who operates an agriculture facility and hail them into court and force them to defend the state statute. What should we make of that? Well, I think, I'm confident, I'm sorry to cut you off, Judge Carlton, but I'm confident that's what you're going to hear from the other side, but that's just not true. We could only allege places which we wish to investigate, for one. We have to fall within the terms of the statute, so we have to actually be able to plausibly allege and then prove at summary judgment that we wish to investigate these facilities. And two, defendants have the option to come in and say, no, we won't use this statute, and therefore we don't want to defend it. They have that option from day one in this case and could have gone into court and said, we have no intention of using this statute, and therefore that moots chill. That's what this court has said in 281 Care Committee and what it said in Republican Party of Minnesota, excuse me, that the defendants could have mooted our chill. They just chose not to, and if you look at page 14 of the Vaught's brief, what they say is they want to keep this out there as an option. They're hoping that they can keep this statute out there and their ability to use it to chill our activities. That creates an actionable case in controversy. Had defendants wished to avoid this entire case, they could have simply done what was their right, which is that we don't want to use this statute, and therefore we're not going to go in and defend it. I suppose the state at some point one might think would come in and defend the merits of the statute if it got to that point and relieve private parties of the need to retain counsel to defend the constitutionality of the statute. Is that an option too? Of course it is, Your Honor, and in fact, as you probably noticed from our exchange with the clerk in this case, when plaintiffs filed the suit, the very first thing they did was go out and notify the state that they had filed the suit challenging the constitutionality where the state's not named. The state has chosen not to intervene, but that we have been trying to put them on notice from day one of this case, and as you know, the state was invited to intervene here as well. Again, defendants have the option, should they not wish to bear these expenses, just to say, we don't want this law. We don't want to be the ones defending it. Go ahead and investigate if you can, and if you can't, better luck next time, and we're not going to defend this because we're not going to sue you under it. As long as they do that, they could have avoided this entire litigation. If there are no further questions at this time, I think I'll reserve the remainder of my time. Thank you. All right. Very well. You may. Mr. Heister, we'll hear from you first, I believe. Thank you, Your Honor. My name is Michael Heister. I'm here today on behalf of the appellee, Pico Foods Incorporated. I'm going to please the court and tend to address two issues. The first is the district court's findings on the injury in fact. And the second is the broader issue of the jurisdictional basis for this lawsuit against my clients. So the first issue is a narrow one, Your Honors. It's a question of standing, and not just standing, but the first component of that test, the injury in fact problem. And there doesn't seem to be any disagreement here that chill can serve as an injury in fact, where it is an objectively reasonable fear. And that was the focus of the district court's analysis, and it was the correct area to focus. The plaintiffs have suggested that they have different kinds of injuries in fact. But that can't avoid the reality that where we have Article 3 standing, as made clear in Clapper and Spokio, the injury in fact requirement is an irreducible constitutional minimum. And so you cannot reduce the constitutional minimum for standing by alleging a different kind of injury in fact. And the basic components of an injury in fact are the same, regardless of how the components, which is eminence, legally cognizable harm. Those are the irreducible constitutional minimums for standing. No matter what sort of specific injury in fact occurs. And this court in digital recognition, already discussed, explained that a credible threat of enforcement is a helpful way to think about whether an objectively reasonable fear exists. And this court in Iowa Right to Life expressed a similar standard, talking about whether there's a realistic danger of a direct injury due to enforcement. These sound like very similar ways of talking about the same concern here. A plaintiff has to have an objectively reasonable fear of a credible threat of enforcement to allege an injury in fact. And throughout the court's case law, there seem to be four ways or elements almost of these sorts of injuries that weigh in on whether an objectively reasonable fear exists. And the first is whether a cause of action exists, which is a pretty fundamental question. There's already been some discussion about Bilal, but what was not discussed was the fact that in Bilal, an actual civil cause of action existed under the statute. So it wasn't like the current appeal, Your Honors, where there's a possibility of an investigation, and a possibility of results, and a possibility of publication, and a possibility of damage to my client, and a possibility that my client might bring a civil lawsuit. We are still several hypothetical steps away from a case like Bilal, where the ACLU had published information that had later learned to be prohibited by Missouri regulation, and it in fact already violated the law. So they might. Well, I thought the plaintiffs here said, we're going to take action that will violate the state law, and you've declined to forego the option of trying to enforce the law against them. Why isn't that enough to create a reasonable fear of enforcement? Well, Your Honor, we know from cases like ours that a party can't simply manufacture standing. And that's precisely what they're trying to do here. That's what they were trying to do when they sent this letter to my client saying, you know, waive this cause of action. Well, there is no reference in the brief stating a private party like my client has any obligation to waive anything in response to an unsolicited letter from a party they've never had any dealings with that hasn't in fact done anything. You certainly don't have an obligation to, but the question is whether that creates a reasonable, objectively reasonable fear that there could be a lawsuit against the plaintiffs if they go on your client's property. Well, Your Honor, we have cases like Eccles, which the district court also relied on. And in Eccles, you had two state actors, not just private parties. You had the city who had issued a notice of abatement, and you had the county who had sent out letters to the plaintiffs from their lawyers saying, you know, we could sue you. And the law firm said, if you don't assist, we're going to recommend suing you. And the Eighth Circuit looked at those situations and said, well, where the government has actually issued a notice of abatement, we'll find an injury in fact. However, the counties, when you're sending out a letter like that, didn't chin that bar. So we have an example right there, Your Honor, of something far more affirmative that was not enough to constitute an injury in fact. And there's another component or another element of this analysis being overlooked, which is whether a party is a private party or a government party. And it may be fair to assume a government party will enforce the law, take action under the law. There's no objective basis for assuming a private party will do anything. I mean, by definition, we're speculating. What's the private party going to do? Mr. Heister, how did this statute come into being? It was through the assiduous actions of your client. No, Your Honor. PICO Foods, there is no allegation that PICO Foods. Well, you're similar clients, but we're similar parties, right? Well, the question here is that the case of controversy exists between my client and the plaintiffs. And we, my clients. Let me ask you, how do you view, what is the, what does the statute consist of in your eyes in terms of a threat to the plaintiffs? Well, Your Honor, the plaintiffs have to do something first. In other words, to use Justice Holmes' famous dictum, is that statute merely a brooding omnipresence in the sky? Well, not necessarily. I found one example of this case being mentioned, or the statute being mentioned in the Arkansas case law. It's a Western District of Arkansas case. And there, the plaintiff brought this claim, among others, in a conventional commercial theft of trade secrets case. So could you imagine a hypothetical where a group like plaintiffs sneaks onto a property, steals confidential trade secrets, and perhaps turns those over to a competitor who engages in more appropriate behavior that's more consistent with the plaintiff's advocacy? And would a cause of action exist under that statute? Perhaps, but that's why Article III requires a true case of controversy. These things cannot, are not supposed to be settled in the abstract. Especially where the First Amendment is being used as a sword offensively against a private party who has taken no action. These are all several steps removed in various ways from all of the case law being cited, like 281 Care Committee or Iowa Right to Life. The plaintiff's allegations, in broad terms, could be brought against any farm in Arkansas. But we don't need to stop there. There's no reason anyone with an advocacy interest in anything could not make parallel allegations that they would like to go out and investigate someone about some sort of potential legal violation. And here, you know, plaintiffs don't even allege that the live hang technique is illegal. If it's not, they just believe it's something they're interested in. So by plaintiff's logic, anyone has standing if they are sitting in their office and think they want to go investigate someone else in Arkansas and are willing to allege that, hey, I'm going to do this. You might sue me. I'll see you in court. That cannot be the basis for the existence of a case of controversy, because under those facts, the controversy exists with everyone in Arkansas. So at what point would you say? I don't want to pin you down on this or make you say something that could be used against you later, but just kind of speculating here. When would there be a credible threat of enforcement of the statute against these plaintiffs here? You know, I appreciate your sensitivity there because that's why we need facts. The district court concluded that if it were a situation like PETA, where an investigation had occurred, investigation had been disclosed, and the university hid or attempted to hide the information that PETA was trying to disclose, and then PETA came back and said, we think there are similar violations again. Those were the facts of PETA versus Stein. Those plaintiffs were not sitting in their offices talking about how someday they might want to come hire investigators to come to our facility. They had been on the ground, they had tried it, it hadn't worked, and they were going back again, and they were doing it against state actors. Well, to refresh my memory, in the complaint in this case, is there an allegation that agents or employees of the plaintiff intended to apply for employment on these farms? That's right, Your Honor. I think that's the allegation, that after they hire somebody, they're going to try to get that person to gain employment under false pretenses. But again, none of that has occurred, and none of that's specific as to my client. Any person in Arkansas could say, I would like to hire someone to sneak into a Walmart. I would like to hire someone to sneak into the mom-and-pop restaurant down the street to monitor their kitchen. There's no real case or controversy there. Well, there's no statute, though, that the state created that would let Walmart sue a person who sneaks in there. Your Honor, I applaud plaintiffs' advocacy characterizing this as an ag-gag law, but in fact it is... Do you think this would apply to Walmart, too? It can apply to a private part of a residence, like a home office. All right, okay. So you think it would apply to anybody like that? If they allege that they were going to do this at Walmart, then presumably you think they could sue Walmart under their theory? I mean, if they have standing, then essentially anyone has standing. This is not like digital recognition, for example, where the parties were actually in Arkansas with cameras doing something. Well, basically you're making the traditional parade of horribles example. Your Honor, for... against the plaintiffs in this case if they choose to proceed? I would ask, what is the objective basis for that? There is none. I mean, the court cannot... Not as long as the statute is there. Well, then that is an issue for the plaintiffs to take up with the Arkansas General Assembly or in the Arkansas courts. That does not confer a federal cause of action against a private party for a violation of constitutional rights, which, there is no state action here, Your Honors. Not on my client's part. Well, isn't that a question to the merits, though, as opposed to standing? Whether they have a valid cause of action that would actually prevail in the end? No, Your Honor. The question is whether an objective fear of prosecution exists. And that actually goes to my second argument of jurisdiction. They have no federal cause of action here. And I am about to run out of my time, Your Honors. So, unless you have any further questions, I need to turn it over to Mr. Rowe. All right. Very well. We'll hear next from Mr. Rowe. Thank you. Thank you, Your Honors, and good afternoon. This is Roger Rowe. I'm counsel for Jonathan and Dan Vaught. And I think... Hold on. I'm sorry. Hold on just a second, Mr. Rowe. There seems to be some confusion with the clock. Now, Mr. Hyster had three minutes left. And I think he felt like there were only three minutes left for the appellees, and so he should yield to Mr. Rowe. But then the clock changed to six minutes. Madam Clerk, what's going on with the timer? Mr. Hyster did have his own three minutes remaining. He had 17 minutes on the clock. All right. Then please stop the clock and put it back to three minutes. Why would there be six minutes for Mr. Rowe if Mr. Hyster... Oh, I see. You took the three that was left and then added the three for Mr. Rowe. All right. So, Mr. Hyster, you had three more minutes of your 17. Do you wish to use that or yield a full six minutes to Mr. Rowe? I mean, I will come back and say again, if the court has any questions, I'm happy to use that time answering them. I didn't have a chance to address the underlying problem with the federal lack of a cause of action here. All right. Well, you had three minutes left. So, Madam Clerk, go ahead and restart the clock. And Mr. Rowe is on his last... I mean, Mr. Hyster is on his last three minutes. And then when he's finished, we'll go to Mr. Rowe. Mr. Hyster, why don't you address why this cause of action point is relevant to standing? I understand you argue it as an alternative ground for affirmance. But why is it relevant to standing? No, Your Honor. Our argument is that it goes to jurisdiction, not standing at all, in the court's jurisdiction. Why? Why doesn't the question of cause of action go to the merits? I'm sorry. I guess I'm not... I'm not sure I understand Your Honor's question. Well, I'm just wondering why you think the existence of a cause of action is a jurisdictional question as opposed to a merits question. I do not mean the existence of a cause of action under the Arkansas Trespass Statute. What I mean is a cause of action against a private party for violating a constitutional right. Since the First and Fourteenth Amendments do not apply to government actors, that's an initial hurdle to get over. So, this is not a 42 U.S.C. 1983 case, for example. So, it's not pleaded as that. So, what is the federal statutory cause of action underlying all of this against my private party client? And the plaintiff's answer is 28 U.S.C. 1331 and the Declaratory Judgment Act. Well, Your Honors, if either of those is an independent federal cause of action, then you can simply eliminate every other federal statutory cause of action because 1331 swallows them all. And that cannot be correct. That's the basis for the federal court's jurisdiction over federal claims. It's not an independent statutory cause of action. Now, the district court didn't have cause to reach that issue, but we argued below and argued here in our briefs that that's fatal to this entire action. And the plaintiffs make many references to cases like Bell v. Hood and its progeny. Those are all Bivens cases. As you know, Bivens cases are brought against federal actors for constitutional violations. So, from our perspective, that is a fatal flaw in this that, frankly, probably needs to be addressed before the standing question, given our jurisdiction is fundamental to the court's hearing this. And I am now genuinely out of time, and we'll sit down if the court has no questions. Very well. Thank you for your argument. Thank you. As soon as we get the clock set up here, we'll go ahead and give him the full three minutes, Madam Clerk. Very well. Mr. Rowe, you may proceed. Thank you, Your Honors. And I'm Roger Rowe. I represent John and Deanne Vaught. And the Vaughts live on the farm that they operate in Sevier County, Arkansas. And to tie in, perhaps, with where the discussion was a few minutes ago, John and Deanne are named as defendants in this complaint in which the plaintiffs, now the appellants, request the district court to enjoin them from enforcing the Trespass Act. Well, John, there's no standing for that claim, because John and Deanne have no claim against any appellant under that act. They've never threatened a claim against an appellant under that act. They've never had any dealings with any representative of an appellant before they were sued. No investigator has ever set foot on their farm. No investigation has ever been conducted on their farm. The appellants have no information about John and Deanne's farm that they could use, being an operative part of the statute, to then cause damage to John and Deanne and create a private cause of action. Against John, a private cause of action on behalf of John and Deanne. So it's undisputed in this case that John and Deanne could not sue any of the appellants under this act, but they're being sued for an injunction prohibiting them from bringing a claim that they don't even have. This is premature at best, but it's also an inappropriate use of the First Amendment against private parties. There are no public entities here. These are just private parties. So these parties aren't even approaching any state action because they don't have a cause of action that they could even write on a piece of paper and file in the court. And to multiply the absurdities here, based on the allegations in the complaint, John and Deanne Volk may never have a claim under the Trespass Act against any of these appellants. And I say never because the appellants allege in their complaint that they use investigators posing as employees to obtain information from non-public areas of commercial property. But the appellants have not alleged that John and Deanne hired any new employees between the passage of the act in 2017 and their sending of this letter in 2019. This is a family bar. And there was a question about the allegations regarding employment. They're very vague and they're not specific at all with regard to John and Deanne Volk. If the Volks were not hiring, the appellants would not place an investigator as an employee on their farm. And with no investigator posing as an employee, the appellants would never obtain information under the circumstances that they could then use it to create a claim under the Trespass Act. So here's what we have. We have John and Deanne being sued for an injunction against bringing a claim that they don't have against persons over whom they reasonably are never going to have a claim. The appellants lack standing to bring this suit under those circumstances. And I'm seeing zero time here. Does that mean I'm out of time? I believe it means that you used your three minutes and we understood that you were going to take three minutes out of the 20. Is that your understanding? That's right. That's right. Very well, then. We thank you for the argument. And we'll hear from Mr. Muraskin in rebuttal. Thank you. And what you just heard was the same sleight of hand that occurred in the briefs. What was constantly being referenced was the question about whether there is going to be suit against plaintiffs.  which we allege, but it's not the question of chill. It exists because of the presence of the statute and us self-censoring in response to the statute. This court in 281 Care Committee was explicit. No threat is required. That's been true of numerous laws. There's no need for the defendants to have threatened them. It's the fact that the statute exists. And if you look at PETA and actually look at the facts of PETA rather than has they been misstated, what it says is that ALDF, the exact same plaintiff here, wants to investigate in North Carolina. It will not even say what facilities it wants to investigate. Nonetheless, the Fourth Circuit found that it had standing. The district court and defendants focus on PETA's specific allegations. Those allegations say that PETA investigated UNC Chapel Hill about 15 years before the law in question was passed. And it says it wants to investigate again. The fact that PETA investigated 15 years ago does not distinguish PETA standing here from ALDF and Animal Equality. These plaintiffs have alleged and they've complained numerous different investigations they are ready, willing, and able and have taken much more recently than 15 years ago of these exact facilities. ALDF alleges, or excuse me, these exact same type of facilities. ALDF alleges it's investigated live hang facilities. Animal Equality alleges it's investigated factory farms like the Vaughts. They've alleged it's investigated more than 700 of these facilities. PETA is exactly the same circumstance about the statute on which the Arkansas statute was modeled. What defendants are trying to say is that there can be no chill standing if the state outsources its power to a private party. In other words, if the state wants to chill speech, it just tells a private party, you go enforce this law. And then we're going to actually never get into court. That's exactly what the chill doctrine is meant to avoid. And that's why defendants can't point to a single case that's ever held something like that because it would gut the chill doctrine. This parade of horribles that you refer to is already addressed and dealt with by the chill doctrine. So what Initiative and Referendum Institute says is that plaintiffs need to plausibly allege they could engage in the covered conduct. So someone couldn't walk off the street and say they want to engage in these activities and have standing. What's unique about Animal Legal Defense Fund and Animal Equality is they allege and are going to be able to prove that they actually can engage in these activities. These are specialized activities. No one could just walk off the street and say I want to engage in an undercover investigation. You have to, and this court is reasonable to put plaintiffs to the test of being able to say, could they plausibly actually carry out those activities that they claim and how does the Tenth Circuit say that we do that? We show you that we've engaged in those activities in the past. And here we've alleged that the plaintiffs have engaged in hundreds of these investigations at essentially identical facilities. To talk about Balao and Eccles, which are also been misrepresented to the court. So in Balao, the plaintiffs had not, or excuse me, the ACLU had not violated the statute. What it said is we have documents and we're worried those documents are going to violate the statute. And as a result of that fear that the documents are going to violate the statute, we're not publishing them. And therefore we have standing. And this court said, yes, you have standing. And Judge Collinson, this is exactly the exchange I pointed to you to earlier because there's actually a factual dispute about whether the documents could ever violate the statute. The court says that doesn't matter. Your fear that they fall within the statute is sufficient for you to have standing. In Eccles, the standing that was found was about a financial harm from a threat of suit. Again, that's different than chill standing. They do go on and say that there's not standing against the county defendants. That's because the county defendants can't enforce the law. That's the exact opposite of what we have here. These defendants can enforce the law and have consistently refused to waive their rights to avoid enforcing the law. The facts that distinguish Eccles are facts in our favor. What about the point raised about whether the VOTS even hire? Well, so two responses to that, Your Honor. One is that's a fact question. We're here on a motion to dismiss and that's something that can come up and it would be a traceability or redressability issue. But they've also misstated the statute. The statute provides for any, if any person violates the law. And as we've explained, plaintiffs can get access through being hired as employees or hired as delivery personnel or hired as contractors for technicians. If they did so and then recorded the VOTS facility, the VOTS would have an action against plaintiffs. So while the VOTS are welcome to raise these factual concerns on remand, which was the appropriate time to do this when we get to a factual debate about standing, they've just misstated the statute to try to make it be confusing as to whether we could actually violate it. Finally, on cause of action, this is directly addressed by Davis v. Pesce. What the Supreme Court says there is that Congress has every right to create or remove cause of action for statutory violations. And that's why we have statutory causes of action. What the court goes on to say, though, is that it's different for constitutional causes of action. And there's always equitable power for the courts to intervene on constitutional claims. And that then 1331 does provide the court jurisdiction to exercise that equitable power. Finally, just in my last moments, I will note, even if you were to accept everything defendants say, we have alleged facts that show that we face the imminent risk of suit. We've alleged facts that show that we are ready, willing, and able to violate the statute. We have an investigator on staff who's ready, willing, and able to go in. That separately provides standard. Thank you, Your Honor. Do you think the cause of action question is part of the standing analysis or separate? It's separate, Your Honor. At the very least, it's a separate question akin to redressability and traceability. It's certainly not part of the injury in fact question, certainly not part of standing. Whether it proceeds or follows, I can't tell you right now whether I have a thought about that. But it's certainly distinct. Redressability and causation are part of standing. Yeah, I'm sorry. I was thinking injury in fact, Your Honor. I'm sorry. Yeah, it's certainly distinct from every part of standing. It's a cause of action that's distinct from standing. I seem to have confused you, though. I apologize. Why do you think you've confused me? I was just trying to… I see you look on your face, Your Honor. I just wasn't sure… That doesn't mean I'm confused. It might mean your answer is confusing. Sure, that's what I was meaning, Your Honor. Just that I apologize if I've said something that it pleases you for me to clarify. No, I just wanted to get your thought on whether cause of action is part of standing or separate. And if that's your thought on it, thank you very much. Yeah. Thank you to all counsel. The case is submitted and the court will file an opinion in due course.